IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| JOHN R. MILDENBERGER AND )<br>MICHELE C. RUTH, )<br>ROBERT O. AND CAROL A. BARATTA, )<br>JOSEPH K. AND PATRICIA T. )<br>HENDERSON, )<br>CHARLES C. AND JULIE D. CRISPIN, )<br>ATHOL DOYLE CLOUD, JR. AND )<br>PATRICIA P. CLOUD, )<br>JAMES J. AND PATRICIA C. HARTER, )<br>ROBERT H. PARÉ, JR. AND ERYN T. )<br>PARÉ, )<br>WILLIAM E. GUY, JR. AND STELLA )<br>S. GUY, )<br>MARK S. BEATTY, )<br>RUFUS WAKEMAN II AND MELYNDA )<br>WAKEMAN, )<br>ROBERT L. P. AND KAREN M. )<br>VOISINET, )<br>ANN S. MACMILLAN, )<br>JOHN FRANCIS PATTESON, )<br>PAUL PARÉ, )<br>BRIAN AND DEBORAH SCHMIDT, )<br>FREDERICK AND KIMBERLY RUTZKE,)<br>FLOYD D. AND MARJORIE N. JORDAN,)<br>PHILIP AND GERALDINE TAFOYA, )<br>WILLIAM H. AND LISA ADDEO, )<br>MARK R. CONNELL, )<br>ROBERT PEARSON, )<br>and )<br>CHARLES V. AND VERA A. LOCKE, )<br> )<br>         Plaintiffs, )<br> )<br>v. )<br> )<br>UNITED STATES, )<br> )<br>         Defendant. )<br> ) | No. 06-760 L<br><br>Judge _____ |

**COMPLAINT FOR JUST COMPENSATION**

1

This is an action to recover just compensation under the Fifth Amendment for Defendant's intentional and repeated discharge of pollutants into the St. Lucie River and estuary system, located in southeast coastal Florida, which has destroyed Plaintiffs' property, including Plaintiffs' riparian rights. This taking of Plaintiffs' property without just compensation, including both Plaintiffs' upland property uses and Plaintiffs' riparian rights, has resulted directly and forseeably from the operational plan adopted by the U.S. Army Corps of Engineers (Corps) for Lake Okeechobee, pursuant to which the Corps regularly discharges pollutants and excess water into the St. Lucie River and estuary through a structure known as S-80, which was constructed and is operated by the Corps specifically for the purpose of making such discharges into the St. Lucie. Defendant's releases of pollutants over time have rendered the waters of the St. Lucie River and estuary toxic and unfit for human contact, and have destroyed the estuarine environment and riparian rights of the homeowners, Plaintiffs, along the St. Lucie River.

**Parties**

1. Plaintiffs, John R. Mildenberger and Michele C. Ruth, own a parcel of approximately one quarter of one acre, including the riparian rights appurtenant thereto, located in Martin County, Florida, commonly known as 8 East High Point Road, Sewall's Point, Florida, 34996. The land, which is contiguous with the St. Lucie River, is improved with a home and a seawall with a walkway on the river. Plaintiffs, John R. Mildenberger and Michele C. Ruth, use the St. Lucie Estuary for boating, swimming, fishing, water sports, and wildlife viewing (e.g., turtles, porpoises and dolphins).

2. Plaintiffs, Dr. Robert O. and Mrs. Carol A. Baratta, own a parcel of approximately two acres, including the riparian rights appurtenant thereto, located in

Martin County, Florida, commonly known as 31 SE Harbor Point Drive, Stuart, Florida,
34996. The land, which is contiguous with the St. Lucie River, is improved with a home,
a well, and a boat dock on the river. Plaintiffs, Dr. and Mrs. Robert O. Baratta, use the
well on their property to irrigate their lawn, trees, and plants. They also use the St. Lucie
Estuary for boating, swimming, fishing, and wildlife viewing.

3. Plaintiffs, Joseph Kevin Henderson and Patricia T. Henderson, own a parcel of
approximately one half of one acre, including the riparian rights appurtenant thereto,
located in Martin County, Florida, commonly known as 645 SW Overlook Drive, Stuart,
Florida, 34994. The land, which is contiguous with the St. Lucie River, is improved with
a home and a boat dock on the river. Plaintiffs, Joseph Kevin Henderson and Patricia T.
Henderson, use the St. Lucie Estuary for boating, swimming, fishing, and wildlife
viewing.

4. Plaintiffs, Charles C. Crispin and Julie D. Crispin, own a parcel of
approximately 1.1 acres, including the riparian rights appurtenant thereto, located in
Martin County, Florida, commonly known as 30 East High Point Road, Stuart, Florida,
34996. The land, which is contiguous with the St. Lucie River, is improved with a home,
a boat dock, and a boat lift on the river. Plaintiffs, Charles C. Crispin and Julie D.
Crispin, use the St. Lucie Estuary for boating, swimming, fishing, wildlife viewing, and
aquatic sports.

5. Plaintiffs, Athol Doyle Cloud, Jr. and Patricia P. Cloud, own a parcel of
approximately 2.1 acres, including the riparian rights appurtenant thereto, located in
Martin County, Florida, commonly known as 61 SE Harbor Point Drive, Stuart, Florida,
34996. The land, which is contiguous with the St. Lucie River, is improved with a home

and a boat dock on the river. Plaintiffs, Athol Doyle Cloud, Jr. and Patricia P. Cloud, use the St. Lucie Estuary for boating, swimming, fishing, and wildlife viewing.

6. Plaintiffs, James J. Harter and Patricia C. Harter, own a home, in which they reside, on a parcel of land, including the riparian rights appurtenant thereto, located in Martin County, Florida, commonly known as 3360 SW St. Lucie Shores Drive, Palm City, Florida, 34990. The land, which is contiguous with the St. Lucie River, is improved with a boat dock on the river. Plaintiffs, James J. Harter and Patricia C. Harter, use the St. Lucie Estuary for boating, swimming, fishing, and wildlife viewing.

7. Plaintiffs, Dr. Robert H. Paré, Jr. and Mrs. Eryn T. Paré, own a parcel of approximately three quarters of one acre, including the riparian rights appurtenant thereto, located in Martin County, Florida, commonly known as 61 N. River Road, Stuart, Florida, 34996. The land, which is contiguous with the St. Lucie River, is improved with a home and a boat dock on the river. Plaintiffs, Dr. and Mrs. Robert H. Paré, Jr., use the St. Lucie Estuary for boating, fishing, and wildlife viewing (e.g., diving ducks, particularly bluebills and ringnecks).

8. Plaintiffs, William E. Guy, Jr. and Stella S. Guy, own a parcel of approximately 1.4 acres, including the riparian rights appurtenant thereto, located in Martin County, Florida, commonly known as 643 SW Fuge Road, Stuart, Florida, 34997. The land, which is contiguous with the St. Lucie River, is improved with a home, two boat docks, and a boat lift on the river. Plaintiffs, William E. Guy, Jr. and Stella S. Guy, use the St. Lucie Estuary for boating, swimming, and wildlife viewing (e.g., mullet, osprey, turtles, and alligators).

9. Plaintiff, Mark S. Beatty, owns a parcel of approximately one acre, including the riparian rights appurtenant thereto, located in Martin County, Florida, commonly known as 1840 NW Bright River Point, Stuart, Florida, 34994. The land, which is contiguous with the St. Lucie River, is improved with a home and a boat slip and lift on the river. Plaintiff, Mark S. Beatty, uses the St. Lucie Estuary for boating, swimming, fishing, wildlife viewing, and aquatic sports (e.g., water skiing).

10. Plaintiffs, Rufus Wakeman II and Melynda Wakeman, own a parcel of approximately one half of one acre, including the riparian rights appurtenant thereto, located in Martin County, Florida, commonly known as 646 NE River Terrace, Jensen Beach, Florida, 34957. The land, which is contiguous with the St. Lucie River, is improved with a home and a boat dock on the river. Plaintiffs, Rufus Wakeman II and Melynda Wakeman, own an additional parcel of approximately two acres, including the riparian rights appurtenant thereto, located in Martin County, Florida, commonly known as 528 NE Alice Avenue, Jensen Beach, Florida, 34957. This land is also contiguous with the St. Lucie River. Plaintiffs, Rufus Wakeman II and Melynda Wakeman, use the St. Lucie Estuary for boating, swimming, fishing, and wildlife viewing.

11. Plaintiffs, Robert L. P. Voisinet and Karen M. Voisinet, own a parcel of approximately one third of one acre, including the riparian rights appurtenant thereto, located in Martin County, Florida, commonly known as 3122 SE Fairway West, Stuart, Florida, 34997. The land, which is contiguous with the St. Lucie River, is improved with a home, a boat dock and a boat lift on the river. Plaintiffs, Robert L. P. Voisinet and Karen M. Voisinet, use the St. Lucie Estuary for boating, swimming, fishing, and wildlife viewing.

12.  Plaintiff, Ann S. MacMillan, owns a parcel of approximately one acre, including the riparian rights thereto, located in Martin County, Florida, commonly known as 201 SE Harbor Point Drive, Stuart, Florida, 34996.  The land, which is contiguous with the St. Lucie River, is improved with a home and a boat dock on the river.  Plaintiff, Ann S. MacMillan, uses the St. Lucie Estuary for boating, swimming, fishing, and wildlife viewing (e.g., mullet, tarpin, snook, porpoises, dolphins, and manatees).

13.  Plaintiff, John Francis Patteson, owns a parcel of approximately 5.75 acres, including the riparian rights appurtenant thereto, located in Martin County, Florida, commonly known as 4820 SW Citrus Boulevard, Palm City, Florida, 34990.  The land, which is on the St. Lucie Canal, is improved with a home and a beach area on the waterway.  Plaintiff, John Francis Patteson, uses the water for boating, swimming, fishing, and wildlife viewing (e.g., bald eagles and osprey).

14.  Plaintiff, Dr. Paul Paré, owns a parcel of approximately 1.5 acres, including the riparian rights appurtenant thereto, located in Martin County, Florida, commonly known as 2081 SE Riverside Drive, Stuart, Florida, 34996.  The land, which is contiguous with the St. Lucie River, is improved with a home, a boat dock on the river, and two boat lifts.  Plaintiff, Dr. Paul Paré, uses the St. Lucie Estuary for boating, swimming, fishing, and wildlife viewing.

15.  Plaintiffs, Brian Schmidt and Deborah Schmidt, own a parcel of approximately 1.5 acres, including the riparian rights appurtenant thereto, located in Martin County, Florida, commonly known as 3211 St. Lucie Boulevard, Stuart, Florida, 34997.  The land, which is contiguous with the St. Lucie River, is improved with a home

and a boat dock on the river.  Plaintiffs, Brian Schmidt and Deborah Schmidt, use the St. Lucie Estuary for boating, swimming, fishing, and wildlife viewing.

16.  Plaintiffs, Frederick Rutzke and Kimberly Rutzke, own a parcel of approximately 0.6 acres, including the riparian rights appurtenant thereto, located in Martin County, Florida, commonly known as 1105 SE Riverside Drive, Stuart, Florida, 34996.  The land, which is contiguous with the St. Lucie River, is improved with a home and a boat dock on the river.  Plaintiffs, Frederick Rutzke and Kimberly Rutzke, also own an additional parcel of approximately two acres, including the riparian rights appurtenant thereto, located in Martin County, Florida, commonly known as Caribbean Shores Hotel, 2625 NE Indian River Drive, Jensen Beach, Florida, 34957.  This land is contiguous with the Indian River.  Plaintiffs, Frederick Rutzke and Kimberly Rutzke, use the St. Lucie Estuary for boating, swimming, fishing, and wildlife viewing.

17.  Plaintiffs, Floyd D. Jordan and Marjorie N. Jordan, own a parcel of approximately one quarter of one acre, including the riparian rights appurtenant thereto, located in Martin County, commonly known as 12 Castle Hill Way, Stuart, Florida, 34996.  The land, which is contiguous with the St. Lucie River, is improved with a home and a boat dock on the river.  Plaintiffs, Floyd D. Jordan and Marjorie N. Jordan, use the St. Lucie Estuary for boating, swimming, fishing, and wildlife viewing (stone crabs and mullet).

18.  Plaintiffs, Philip Tafoya and Geraldine Tafoya, own a parcel of approximately one half of one acre, including the riparian rights appurtenant thereto, located in St. Lucie County, Florida, commonly known as 200 Olive Avenue, Port Saint Lucie, Florida, 34952.  The land, which is contiguous with the St. Lucie River, is

improved with a home and a boat dock on the river.  Plaintiffs, Philip Tafoya and

Geraldine Tafoya, use the St. Lucie Estuary for boating, swimming, fishing, and wildlife

viewing.

19.  Plaintiffs, William H. Addeo and Lisa Addeo, own a parcel of approximately

four acres, including the riparian rights appurtenant thereto, located in Martin County,

Florida, commonly known as 1375 SE St. Lucie Boulevard, Stuart, Florida, 34996.  The

land, which is contiguous with the St. Lucie River, is improved with a home and a boat

dock on the river.  Plaintiffs, William H. Addeo and Lisa Addeo, use the St. Lucie

Estuary for boating, swimming, fishing, and wildlife viewing.

20.  Plaintiff, Mark R. Connell, owns a parcel of approximately one quarter of one

acre, including the riparian rights appurtenant thereto, located in Martin County, Florida,

commonly known as 1219 S.W. Dyer Point Road, Palm City, Florida, 34990.  The land,

which is contiguous with the St. Lucie River, is improved with a home and a boat dock

on the river.  Plaintiff, Mark R. Connell, uses the St. Lucie Estuary for boating,

swimming, fishing, and wildlife viewing.

21.  Plaintiff, Robert Pearson, owns a parcel of approximately two acres,

including the riparian rights appurtenant thereto, located in Martin County, Florida,

commonly known as 485 SE St. Lucie Boulevard, Stuart, Florida, 34996.  The land,

which is contiguous with the St. Lucie River, is improved with a home and a boat dock

on the river.  Plaintiff, Robert Pearson, uses the St. Lucie Estuary for boating, swimming,

fishing, and wildlife viewing (e.g., manatees).

22.  Plaintiff, Charles V. Locke and Vera A. Locke, own a parcel of

approximately one quarter of one acre, including the riparian rights appurtenant thereto,

located in Martin County, Florida, commonly known as 779 SW 31st Street, Palm City, Florida, 34990. The land, which is contiguous with the St. Lucie River, is improved with a home and a boat dock on the river. Plaintiffs, Charles V. Locke and Vera A. Locke, use the St. Lucie Estuary for boating, swimming, fishing, and wildlife viewing (e.g., pelicans and mullet).

23. Defendant, United States of America, is a republic formed pursuant to the Constitution of the United States, and exercising the powers described therein subject to certain limitations, including the Fifth Amendment to the United States Constitution, which prohibits the taking of private property for public use, without payment of just compensation.

**Jurisdiction**

24. This Court has jurisdiction of this case under 28 U.S.C. § 1491 (the Tucker Act) as a "claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department or upon any express or implied contract with the United States . . . ."

**Operative Facts**

25. The St. Lucie River estuarine system, located in Martin and St. Lucie counties, Florida, consists of a mixing zone in which tidal waters advance and retreat to create a bountiful and fragile habitat of immense natural and socioeconomic value. "The St. Lucie River is the environmental and economic lifeblood of Martin and St. Lucie Counties," according to the South Florida Water Management District. St. Lucie River/Estuary, *at* http://www.sfwmd.gov/org/exo/mslsc/slr/index.html (last visited October 16, 2006). The estuary normally receives freshwater inflows from its own

watershed basin, which supports a marine life ecosystem rated among the most diverse in North America. The regional watershed combined with tidal flows maintain the critical salinity levels necessary for the estuarine plant and wildlife communities as well as great riparian values of the plaintiffs. When not invaded by water discharged into the estuary from inland, the river is normally free of excessive turbid freshwater, harmful algae, extreme sedimentation, plant and wildlife degradation, and other problems.

26. The St. Lucie River is not naturally connected to Lake Okeechobee. Lake Okeechobee originally flowed south and into the Everglades. In 1924 and in the years thereafter, however, the U.S. Army Corps of Engineers built and expanded a large dike around Lake Okeechobee, and a canal (St. Lucie Canal) connecting the Lake with the St. Lucie River and estuary at the St. Lucie control structure, commonly known as S-80 . Discharges into the St. Lucie estuary are made by the Corps through S-80,which is owned and operated by the Corps.

27. The Corps uses Lake Okeechobee for multiple purposes, including storage of water for irrigation and also for agricultural flood control and other purposes. To accommodate both uses, and to control water height in the Lake, the Corps releases irrigation water stored in the Lake, particularly when large rain events occur. The Corps has constructed a levee more than 30 feet high around the Lake to control water flow to the Everglades in the south, allowing the Corps to manipulate lake levels to provide irrigation for sugar cane fields to the south, and to a lesser extent, provide flood control for developed areas. The system includes the Okeechobee Waterway, a 152-mile-long canal built by the Corps in 1937 and later enlarged. This waterway connects with the south fork of the St. Lucie River. The Okeechobee Waterway provides a means whereby

10

the Corps releases water from the Lake east to the St. LucieRiver, and west to the Gulf of Mexico.

28. Over the years, Lake Okeechobee has become heavily laden with excess nutrients from cattle raising and other agricultural activities. These excess nutrients have concentrated in the Lake's waters, leading to its pollution and algae blooms and extreme turbidity. The Corps also releases large volumes of fresh water into the normally brackish water of the estuary. Those releases, too, operate as a pollutant because they upset the delicate saline balance of the St. Lucie. In 2005, a total of 303 billion gallons were discharged from the lake at Port Mayaca (S-308). Fresh water releases destroy the delicate balance between salt and fresh water so critical to a tidal estuary. In five of the past eleven years, high-volume discharges to the St. Lucie Canal totaled well over 150 billion gallons each.

29. The Corps' periodic releases of heavily polluted fresh water releases into the St. Lucie River estuary system have also irrevocably altered the biochemical balance (including salinity levels) and character of the St. Lucie, degrading fish life and other marine organisms and critically needed vegetation. As a result, much of the St. Lucie estuary system today is a biological dead zone, lacking few of its natural species. The non-saline water kills millions of oysters and prevents popular fish such as spotted sea trout from residing and spawning. The water shunted from inland kills hundreds of acres of turtle grass and other estuarine life, eliminating large amounts of food fish normally consumed by animals such as bottlenose dolphin, turtles, eagles and others. These losses are cataclysmic inasmuch as a healthy estuary is well known to provide immense socio-economic benefits to the riparian landowners and the community.

30. For example, during the summer and fall of 2005, the Florida Department of Health judged the river unsafe for human contact and posted warnings at public areas banning swimming, with all capital letters stating:

AVOID CONTACT WITH WATER IN THE ST. LUCIE RIVER.

The Stuart and Martin County area waters were covered with a toxic blue-green algae which the Health Department warned could cause "skin rash, runny nose, irritated eyes." A poster added that "Swallowing such water can: cause vomiting or diarrhea, affect your liver, poison pets." The microcystic algae also caused a stench and slime that made normal water activities impossible. Resorts located on the St. Lucie River cancelled use of sail boards, fishing, and other waterborne activities for at least six months.

31. Under the Corps' existing operational plan for the St. Lucie River, the Corps' regular and periodic discharges of polluted water and fresh water into the River and its estuary have severely impaired or destroyed both the estuarine habitat of the St. Lucie River and the riparian rights of Plaintiffs to swim, boat, fish, and use the water for recreational purposes. Destruction of the St. Lucie's habitat has also impaired Plaintiffs' use and enjoyment of their homes, yards, docks, boats and upland property, while depriving them entirely of the riparian right to be free of pollution. The Florida Treasure Coast Regional Planning Council reports that fish and wildlife associated with the River are disappearing; likewise, recreation on the River has virtually ceased because contact with the River water is considered a health hazard.

## CAUSE OF ACTION
## JUST COMPENSATION FOR PROPERTY TAKEN

32. Plaintiffs reallege and incorporate by this reference all of the preceding allegations, and further allege as follows:

33. Plaintiffs' riparian right to use and enjoy the water in the St. Lucie River free from pollution, and to enjoy their homes, yards, docks, boats and other riverside property, are  property rights created under Florida law, and protected by the Fifth Amendment of the United States Constitution.

34. As a direct and proximate result of Defendant's actions herein alleged, the United States has physically invaded, occupied, and destroyed the riparian and upland rights of each Plaintiff.

35. Despite this taking of Plaintiffs' property for public use, Defendant has failed and refused to pay Plaintiffs just compensation, in violation of the Fifth Amendment of the United States Constitution, which provides:  "[N]or shall private property be taken for public use, without just compensation." U.S. CONST. amend. V.

36. As a direct, foreseeable, and proximate result of Defendant's acts, Plaintiffs have been damaged in an amount as yet unascertained, but estimated to be approximately $50 million, equal to the just compensation due them under the Fifth Amendment, including interest thereon at a rate to be established by this Court.  Plaintiffs will seek leave of Court to amend this complaint to conform to proof of such damages at trial.

37. As a further direct, foreseeable and proximate result of the taking of their property without just compensation, Plaintiffs have been required to and have retained the services of counsel to prosecute this action.  Plaintiffs have incurred, and will incur, attorneys' fees, appraiser fees, expert witness fees, and costs and expenses of litigation in

an amount as yet unascertained.  Plaintiffs will seek leave of this Court to amend this

complaint to conform to proof of such damages at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1.  A money judgment equal to the just compensation owing to each Plaintiff for

the physical taking of his or her property for public use without payment of just

compensation, together with interest thereon at the legal rate from the date of taking, in

an amount estimated to be at least $50 million;

2.  Reasonable attorneys' fees for the bringing of this action;

3.  The expenses of appraisers and other experts reasonably required to prosecute

this action, together with other costs of this suit; and

4.  Such other and further relief as the Court may deem just.


Respectfully submitted,


Roger J. Marzulla
Nancie G. Marzulla
MARZULLA & MARZULLA
1350 Connecticut Ave., N.W.
Suite 410
Washington, DC 20036
(202) 822-6760
(202) 822-6774 (facsimile)

Counsel for Plaintiffs

Dated:  November 9, 2006