IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| JOHN R. MILDENBERGER, *et al.*,<br>Plaintiffs,<br>v.<br>UNITED STATES,<br>Defendant. | No. 06-760L<br>(Judge Lynn J. Bush) |

JOINT PRELIMINARY STATUS REPORT

Plaintiffs, John R. Mildenberger, *et al.*, and Defendant, the United States of America, by and through their respective counsel, hereby submit this Joint Preliminary Status Report pursuant to Appendix A (Section III, ¶ 4) of the Rules of the United States Court of Federal Claims ("RCFC").

A. JURISDICTION

Plaintiffs state that this Court has jurisdiction over this case under the Tucker Act as a "claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department or upon any express or implied contract with the United States . . . ." 28 U.S.C. § 1491.

Defendant states that the Tucker Act, 28 U.S.C. § 1491, is the principal statute conferring jurisdiction on the United States Court of Federal Claims to hear Fifth Amendment takings claims.

B. CONSOLIDATION

The parties agree that this case need not be consolidated with any other case.

C. BIFURCATION

Plaintiffs state that this case should be bifurcated into a liability phase and a damages phase, with liability being tried first, and damages being tried thereafter only if liability is determined.

Defendant agrees that for judicial efficiency it is appropriate to bifurcate these proceedings. Defendant intends to file a dispositive motion addressing liability pursuant to RCFC 56 at the conclusion of discovery. Defendant further states that the question of whether the property interest asserted by plaintiffs is cognizable under the Fifth Amendment is a federal, not state, issue.

D. DEFERRAL OF PROCEEDINGS

The parties recommend that the proceedings in this case not be deferred and that the parties be allowed to proceed with discovery pursuant to the joint proposed discovery plan set forth below. Allowing the parties to proceed with discovery will allow this case to proceed expeditiously toward resolution.

E. REMAND OR SUSPENSION

The parties do not intend to seek a remand or suspension in this case at this time.

F. ADDITIONAL PARTIES

Plaintiffs do not intend to join any additional parties at this time. However, because there are numerous property owners in the St. Lucie River area who are similarly situated to Plaintiffs, Plaintiffs may file a motion for class certification pursuant to RCFC 23.

Defendant will oppose any motion for class certification.

G. MOTIONS

Plaintiffs may file a Motion for Summary Judgment on liability at the close of discovery if it appears that there are no triable issues of material fact.

As stated above, Defendant intends to file a dispositive motion pursuant to RCFC 56 regarding liability after discovery concludes.

H. RELEVANT FACTUAL AND LEGAL ISSUES

Plaintiff's Statement

This is a suit by 22 property owners under the Fifth Amendment of the United States Constitution to recover just compensation for the physical taking of their riparian rights along the St. Lucie River estuarine system, located in Martin and St. Lucie counties, Florida. In its natural state, Lake Okeechobee did not connect with the St. Lucie River, and thus did not discharge water into the St. Lucie. Over the years, however, the United States has constructed dikes, dams, canals and other structures to artificially alter the natural water flow in southeast Florida, including the construction of a 23.9-mile canal connecting Lake Okeechobee for the first time to the St. Lucie River. In many years, the Corps uses this canal and related structures to discharge billions of gallons of polluted water into the St. Lucie River and estuary which do not naturally flow into the St. Lucie, destroying Plaintiffs' ability to use and enjoy their homes and businesses adjacent to the St. Lucie, as well as depriving them entirely of their riparian right to use the water, free of pollution.

The Corps' regular and periodic discharges of polluted water into the river and its estuary have severely impaired or destroyed both the river's estuarine habitat and Plaintiffs' riparian rights to swim, boat, fish, and use the water for recreational purposes. The destruction of the St. Lucie River's habitat has impaired Plaintiffs' use and enjoyment of their homes, yards, docks,

boats and upland property, while depriving them entirely of the riparian right to be free of pollution.

By releasing billions of gallons of polluted water from Lake Okeechobee into the St. Lucie Canal, the United States has destroyed the estuarine habitat, and has cultivated such toxicity in the St. Lucie water that Plaintiffs can no longer enjoy their homes, yards, docks, boats and other riverside property, without fearing disease and infection. The Florida Department of Health even judged the water unsafe for human contact during the summer and fall of 2005, and banned swimming, fishing and other contact with the water in the river.

Plaintiffs have identified the following legal issues for resolution by this Court:

1. Whether Defendant's actions constitute a compensable taking of Plaintiffs' property and riparian rights pursuant to the Fifth Amendment?
2. If liability is found, what is the appropriate measure of damages, including interest?
3. If liability is found, what is the appropriate amount of attorneys' fees and costs to be paid to Plaintiffs?

<u>Defendant's Statement</u>

Lake Okeechobee is the second largest freshwater lake in the contiguous United States, and plays a central role in South Florida's water supply and flood control system. Lake Okeechobee is a part of the Federal Central and Southern Florida ("C&SF") Project, created by the Flood Control Act of 1948 as a multi-purpose project providing for flood control, drainage, control of water, preservation of fish and wildlife, regional groundwater control, salinity control

and navigation. Canals connect the lake to the St. Lucie River to the east and the Caloosahatchee River to the west, which allow for navigation to the Atlantic Ocean and Gulf of Mexico. These canals, as well as other water management structures, including structures to the south, are used for water releases from Lake Okeechobee. The Corps' releases from the lake are guided by the Lake Okeechobee regulation schedule. The current regulation schedule is known as the Water Supply and Environment and was adopted in 2000. Runoff from surrounding areas and precipitation cause the lake level to rise. To maintain the integrity of Lake Okeechobee's levee system, and to achieve C&SF Project purposes, the Corps releases water from the lake through various outlets. Lake Okeechobee experienced unusually high levels from 2003 to 2005, stemming, in part, from back-to-back historically significant hurricane seasons in 2004 and 2005.

The watershed that feeds into the St. Lucie River and estuary covers a broad geographic area that includes agricultural and urban development. Agricultural practices and stormwater runoff resulting from urban development have been a large source of the pollutants to the St. Lucie River and estuary. Additionally, runoff from agricultural practices and urban development north of Lake Okeechobee add pollutants to the lake. The Corps itself does not pollute or in any way add contaminants to the water discharged from the lake.

Defendant identifies the following legal issues for resolution by this Court:

1. Whether Plaintiffs' have a cognizable property interest in the biological condition of the St. Lucie River?
2. Whether the Corps caused pollution of the St. Lucie River?
3. Whether the Corps' release of water from Lake Okeechobee could constitute a taking under the Fifth Amendment when the Corps does not control the sources of excess

water and pollutants?

4. Whether the navigational servitude bars plaintiffs' claim for a taking?

5. If liability is found, what is the appropriate measure of just compensation?

I. SETTLEMENT

At this time, the parties do not believe that any form of alternative dispute resolution would be helpful.

J. TRIAL

The parties do not request an expedited trial schedule.

Plaintiffs anticipate that the issue of liability may be resolved through a dispositive motion but that the issue of damages will require a trial.

Defendant anticipates that this case will be resolved through a dispositive motion addressing liability, and therefore, the issue of just compensation will be moot.

K. ELECTRONIC CASE MANAGEMENT NEEDS

The parties are not aware at this time of any electronic case management issues.

L. OTHER INFORMATION

The parties know of no other information of which the Court should be aware at this time.

M. DISCOVERY PLAN

Joint Proposed Discovery Plan

1. The parties shall exchange RCFC 26 initial disclosures by May 11, 2007.

2. The parties shall exchange all RCFC 33, 34 and 36 written discovery requests by June

11, 2007.

3. With the exception of paragraph 4 below, the parties shall exchange responses to written discovery requests by July 11, 2007.

4. Should the parties' responses to written discovery requests involve the production of electronic-mail, such productions shall occur by August 10, 2007.

5. The deadline for all fact discovery, including depositions, shall be October 11, 2007.

6. The parties shall identify experts by October 18, 2007.

7. The parties shall exchange expert reports on November 16, 2007.

8. Discovery shall close December 15, 2007.

9. A post-discovery conference shall be scheduled at the Court's convenience following the close of discovery.

Respectfully submitted,

MATTHEW MCKEOWN
Acting Assistant Attorney General
Environment & Natural Resources Division

/s/ Roger J. Marzulla
ROGER J. MARZULLA
NANCY G. MARZULLA
GREGORY T. JAEGER
Marzulla & Marzulla
1350 Connecticut Ave., N.W.
Suite 410
Washington, D.C. 20036
(202) 822-6760 (phone)
(202) 822-6774 (fax)

Counsel for Plaintiffs

/s/ Steven D. Bryant
STEVEN D. BRYANT
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
601 D Street, NW
Washington, D.C. 20044
(202) 305-0424 (phone)
(202) 305-0506 (fax)

Counsel for Defendant

Dated: April 5, 2007